# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA)

| | |
|---|---|
| **JAMES JORDANOFF, IV,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | No. CIV 18-378-RAW-SPS |
| ) | |
| **MIKE SINNETT, et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections who is incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at the Pontotoc County Justice Center (PCJC) in Ada, Oklahoma. The defendants are Mike Sinnett, Jail Administrator; Shannon McGuire, Shift Supervisor; and John Christian, Pontotoc County Sheriff. The Court has before it for consideration Plaintiff's amended complaint (Dkt. 12), a special report prepared at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 69, 73), and Defendants' motion to dismiss or for summary judgement (Dkt. 70). Plaintiff has not filed a response to the motion.

**Plaintiff's Allegations**

Plaintiff alleges that when he was booked into the PCJC for kidnaping, assault, and various other charges, he received a medical assessment and was permitted to call his attorney. He also was allowed to take a shower and was placed in a clean holding cell in the booking area for approximately two days. He then was moved to the North Observatory or NO.

Plaintiff asserts that because Defendant Sinnett and his subordinate officers stole his

confidential legal records and notes from his cell, he no longer has possession of the dates, times, places, or records of events related to the civil rights violations he allegedly suffered. He, therefore, has related his account of the events to the best of his knowledge.

Approximately four or five days after his transfer to the North Observatory, Plaintiff asked Defendant McGuire for a shower. Plaintiff claims he was constantly ignored, and his request was denied. McGuire allegedly applied a plastic binder over Plaintiff's window instead of allowing him to "enjoy his hygine [sic] rights." Plaintiff also alleges he was not allowed to make any "phone calls marked as privilages [sic]," which he contends was a denial of due process. (Dkt. 12 at 16).

Plaintiff further asserts he was tormented by Defendant McGuire who, along with her trustees, kicked on his cell door, verbally threatened him about tampering with his food, and called him an "S.O.," which stands for "sex offender." This behavior by the facility officers allegedly continued for weeks, until Plaintiff forcibly pushed his way out of the cell as a trustee handed food to him. Plaintiff walked to the front desk where McGuire was sitting and asked for the jail administrator, but was told the administrator was not there. (Dkt. 12 at 16-17).

Plaintiff claims he was told to lock down, but he informed McGuire he had not been granted his right to shower every 72 hours. Plaintiff asked McGuire to allow him to shower or to call his attorney about the denial of his constitutional rights. McGuire again told Plaintiff to return to his cell and advised that she would allow Plaintiff out of his cell when she finished feeding people. Plaintiff, however, was not allowed out of his cell, and McGuire again placed the plastic binder over his cell window. McGuire also threatened Plaintiff by telling him she would have his "food fucked with." (Dkt. 12 at 17-18).

Plaintiff maintains he has undergone extreme mental anguish as the result of Defendant

McGuire's actions, including his being placed in a restraint chair in the booking area during his first 1-1/2 months at the PCJC. McGuire allegedly left Plaintiff strapped in the restraint chair from nine to twelve hours with no water, no restroom breaks, and in violation of the safety code, which requires the restrained person to have his arms and legs loose periodically. Plaintiff claims he was left in the restraint chair for inhumane lengths of time in his own urine and excrement. (Dkt. 12 at 18).

Plaintiff further alleges his days in the restraint chair caused him to suffer extreme numbness in his hands, feet, and neck. His neck also is extremely painful from an unnamed officer's standing on it while he was in DO or "Dirty Holding" while he was strapped in a restraint chair that was on its side. (Dkt. 12 at 20).

Plaintiff also claims he has been very ill because of the harsh and extreme conditions of his confinement. He has been subjected to extremely cold temperatures, requiring him to live and sleep inside his plastic mat without a shirt for days. He also claims he had nothing to eat from January 2, 2019, until the date of his amended complaint, which was signed on January 9, 2019. (Dkt. 12 at 20).

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendants' motion.

**Defendants' Motion to Dismiss**

Defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for any of his claims. Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An

inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

**Discussion**

The record shows that Plaintiff was booked into the PCJC on September 10, 2018. (Dkt. 69-3 at 1). The next day, on September 11, 2018, he was transferred to Cell NO, where he was housed until September 14, 2018, when he was moved to T Unit. He subsequently was reassigned to different cells throughout his incarceration at PCJC. (Dkt. 69-9).

Defendants allege the PCJC has a Prisoner Grievance and Request System (Policy No. 20-04), which allows an inmate to file a written grievance following an incident or decision which the inmate believes violates his civil, constitutional, or statutory rights, involves a criminal act by a staff member, or unjustly denies or restricts his privileges. According to the grievance procedure, inmates can initiate a grievance to the Housing Officer who has the initial responsibility for addressing the issue. If the Housing Officer is unable to resolve the grievance, he will furnish the inmate an Inmate Grievance Form and will assist in its completion, if necessary. The completed grievance form next is forwarded to the Detention Administrator for a response. The grievance response then can be appealed to the Sheriff or designee. (Dkt. 69-3 at 12; Dkt. 69-20 at 1-2).

Throughout Plaintiff's incarceration at the PCJC, the facility employed a kiosk system for inmates to electronically submit requests to staff or grievances. The kiosk system is available to most inmates in the jail, however, inmates who do not have access to a kiosk may

submit requests to staff or grievances in writing on the facility's form or any other piece of paper. Plaintiff allegedly had access to the kiosk system when he was housed in the T and Y Units. He did not have access to a kiosk when he was housed in the NO, SO, DT1, or DT2 cells, but he had access to the facility's paper form through a verbal request to any staff member. No inmate grievance regarding any of Plaintiff's allegations was submitted to the Jail Administrator or Sheriff. (Dkt. 69-20 at 2-3). Defendants maintain that by failing to submit any grievance or to take advantage of the required available grievance process, Plaintiff has failed to utilize the PCJC grievance system.

Although Plaintiff did not file a response to Defendants' motion to dismiss, he asserted in his amended complaint that he did not receive an inmate handbook or a verbal orientation upon his reception at the PCJC. He admits, however, that he did receive and sign for a handbook at a much later date. He contends that on December 27, 2019, his handbook was stolen from his cell, along with his confidential legal notes he had prepared for his litigation. (Dkt. 12 at 4-5). The record shows that Plaintiff signed a receipt stating he received a handbook on jail rules on November 27, 2018. (Dkt. 69-3 at 11-12).

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust"). *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted). Here, the Court finds Plaintiff has failed to show that administrative remedies were unavailable at the PCJC. The Court thus finds Plaintiff has failed to exhaust the administrative remedies for his claims.

**ACCORDINGLY,** Defendants' motion to dismiss (Dkt. 70) is GRANTED, and this action is DISMISSED for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). Defendants' motion for confession of judgment (Dkt. 76) is DENIED as moot.

**IT IS SO ORDERED** this 24th day of September 2020.

Ronald A. White
United States District Judge
Eastern District of Oklahoma